UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VLADIMIR POPONIN, Ph.D.,

    Plaintiff,

    v.

VIRTUAL PRO, INC.,

    Defendant.
_____/

No. C 06-4019 PJH

**ORDER GRANTING MOTION TO DISMISS AND DENYING MOTION FOR PRELIMINARY INJUNCTION**

    Plaintiff's motion for a preliminary injunction, and defendant's motion to dismiss the action, or in the alternative, to stay arbitration, and motion for a protective order, came on for hearing before this court on August 30, 2006. Plaintiff appeared by his counsel Michael J. Sacksteder, and defendant appeared by its counsel Richard C. Darwin. Having read the parties papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES the motion for preliminary injunction, GRANTS the motion to dismiss, and DENIES the motion for a protective order.

## BACKGROUND

    This is an action seeking declaratory and injunctive relief, and vacatur of an interim arbitration award, and also alleging breach of contract.

    Plaintiff Vladimir Poponin, Ph.D., is a Russian-born theoretical physicist. He originally came to the United States at the invitation of Stanford University's Chemistry Department, to do research into the spectroscopy of DNA. He became a permanent

resident of the United States in 1995, and subsequently left Stanford to pursue private ventures.

In 1998, Dr. Poponin filed a provisional application in the United States Patent and Trademark Office for a patent on one of his inventions. As the deadline approached for filing a utility patent application to claim priority to the provisional application, he met Martti Vallila ("Vallila"), the President of defendant Virtual Pro, Inc. (Virtual Pro"). Dr. Poponin alleges that Vallila told him that Virtual Pro was in the business of commercializing intellectual property owned by Russian citizens, and that Vallila suggested that Virtual Pro help Dr. Poponin with the funding and development of his first patent.

On September 20, 1999, Dr. Poponin entered into an agreement with Virtual Pro. He signed two documents – an "Agreement" and an "Assignment." In the Agreement, Dr. Poponin agreed to assign all rights in one of his inventions (specified in the "Assignment") to Virtual Pro, and Virtual Pro agreed to complete the process of obtaining a patent on the invention, to commercialize it, and to pay Dr. Poponin 50% of the revenues. The Agreement provided for the submission of any disputes "arising in connection with the present Agreement" to binding arbitration under the Rules of Arbitration of the International Chamber of Commerce ("ICC") Court of Arbitration.

In the Assignment, Dr. Poponin assigned all ownership and rights in an invention described as "A New Method for the Analysis of Nuclic Acids Hybridization on High Density NA Chips." Dr. Poponin made the Assignment "consistent with my Agreement with Virtual Pro." The Assignment also provided that "[a]ny claims or legal actions relating to this assignment and the transactions to which it relates shall be commenced and maintained in a state or federal court located in the State of California."

Virtual Pro subsequently financed and otherwise supported the issuance of U.S. Patent No. 6,376,177 ("the '177 patent"), based on the technology described in the provisional application filed by Dr. Poponin. Virtual Pro retained an attorney to prosecute the patent application, which was filed on October 6, 1999. The patent issued on April 23, 2002.

At some point after he entered into the Agreement with Virtual Pro, Dr. Poponin began to develop additional inventions ("the unrelated inventions") that he claims were not described in the provisional application and were not covered by the terms of the Agreement or the Assignment. Dr. Poponin subsequently filed a number of U.S. and foreign patent applications covering those new inventions.

On June 14, 2005, Virtual Pro filed a claim with the ICC Court of Arbitration, asserting that Dr. Poponin had breached the Agreement by, e.g., failing to copy Vallila with e-mail correspondence and refusing to answer Vallila's questions; excluding Virtual Pro's representative from negotiations or meetings with potential commercial and/or scientific partners; failing to assign to Virtual Pro patent applications containing inventions deriving from the subject matter of the invention referenced in the Agreement/Assignment; and secretly initiating negotiations relating to the possibility of assigning the '177 patent to some Japanese company.

Among other things, Virtual Pro demanded an accounting of all contracts signed by Dr. Poponin relating to the subject matter of the Agreement, and payment of 50% of all sums received by Dr. Poponin in connection with any such contracts. According to Dr. Poponin, Virtual Pro is attempting to assert rights over the unrelated inventions.

Dr. Poponin submitted a response to the ICC on August 24, 2005. Dr. Poponin and Virtual Pro each nominated a co-arbitrator, and the ICC nominated a third member of the panel. On October 7, 2005, the ICC confirmed the nomination of the arbitrators proposed by Dr. Poponin and Virtual Pro, and formally determined to allow the matter to proceed in accordance with the ICC Rules.

On January 20, 2006, Dr. Poponin (through his then-attorney Frank Sommers) filed a brief in support of his request to dismiss the arbitration for lack of jurisdiction, arguing that the arbitrators did not have jurisdiction over the dispute because he had never agreed to the arbitration. He asserted that the Agreement and the Assignment were part of an integrated whole, and that the Assignment expressed the parties' primary intent that disputes be settled by a court, not by arbitration. He also asserted that the consent to

3

arbitration was part of a contradictory section of an integrated document.  Virtual Pro filed a response on January 25, 2006.

On January 30, 2006, Mr. Sommers sent the tribunal an e-mail stating that he had been removed as counsel because Dr. Poponin was unable to pay his fees, and that Dr. Poponin would be representing himself in the arbitration.  On February 3, 2006, Dr. Poponin filed a reply brief on the jurisdictional issue.

On March 13, 2006, the ICC arbitral tribunal issued an interim award determining that it had jurisdiction, and reserving all other decisions to a future award.  The tribunal found that the Agreement and Assignment were separate documents – and that while the Agreement made reference to the Assignment, it did not incorporate the Assignment by reference, and that the Agreement stated that its provisions "constitute[ ] the sum total of the [A]greement."  The tribunal also noted that the Assignment was executed only by Dr. Poponin, not by Virtual Pro, and contained a submission to jurisdiction provision as to "[a]ny claims or legal actions relating to this [A]ssignment and the transactions to which [the Assignment] relates."

The tribunal found that the claims asserted by Virtual Pro and the general relief requested fell within the scope of the Agreement, which contained a broad arbitration clause submitting such disputes to arbitration under the ICC Rules of Arbitration. The tribunal concluded that it had jurisdiction to hear the disputes submitted in the matter before it.

Dr. Poponin also filed counterclaims against Virtual Pro in the arbitration.  However, the counterclaims were dismissed by the ICC because Dr. Poponin failed to pay the required $106,000 filing fee by the deadline imposed by the ICC.  In addition, during the time that Dr. Poponin was not represented by counsel (from January 30 to May 24, 2006), the discovery deadline passed and the tribunal subsequently found that Dr. Poponin was precluded from seeking any discovery in the arbitration.

Dr. Poponin filed the complaint in the present action on June 28, 2006.  Dr. Poponin alleges that the attorney hired by Virtual Pro to prosecute the '177 patent failed to claim

4

priority to the provisional application, and unnecessarily narrowed the scope of the claims of the patent during prosecution. Dr. Poponin asserts that he made numerous requests to Virtual Pro to remedy the errors of its patent prosecution attorney, to no avail. Dr. Poponin also claims that Virtual Pro refused to pursue an international filing of the '177 patent, further diminishing its value. When Dr. Poponin tried to remedy the alleged errors himself, by filing amended claims, he claims that Virtual Pro – which was required to sign off on the filing because it was the assignee – refused to do so. Dr. Poponin claims that Virtual Pro has failed to take any steps to commercialize the patent, and that he has received no revenue from his invention.

Dr. Poponin asserts seven causes of action:

(1) a claim seeking a declaratory judgment that the ICC lacks jurisdiction because there is no valid agreement requiring arbitration of Virtual Pro's pending claims;

(2) a claim seeking a declaratory judgment that Virtual Pro has no rights in any invention referenced in the Agreement and Assignment;

(3) a claim seeking a declaratory judgment that Virtual Pro has no rights in the inventions and patents created subsequent to the execution of the Agreement and Assignment, or to monies from Dr. Poponin's contracts and agreements relating to the unrelated inventions;

(4) a claim seeking a declaratory judgment that the Agreement and Assignment as construed by defendant are null and void as contrary to public policy;

(5) a claim seeking a declaratory judgment that any obligations Dr. Poponin might owe pursuant to the Agreement or Assignment are excused by Virtual Pro's material breach;

(6) a claim alleging breach of contract by Virtual Pro; and

(7) a claim seeking vacatur of the Interim Arbitration award, with regard to the issue of arbitrability.

He also seeks a stay of the arbitration or an order preliminarily enjoining any further

proceedings in the ICC pending resolution of whether arbitrability was properly determined by the arbitrator.

On July 5, 2006, Dr. Poponin notified the ICC tribunal that he had filed the present action, and requested a stay of the arbitration proceedings pending resolution by this court of his claim that the dispute is not arbitrable. The tribunal denied the request. Dr. Poponin also asked Virtual Pro to agree to a stay, but Virtual Pro declined.

On July 17, 2006, the tribunal held a telephonic conference to discuss discovery rulings and to set the date for the final hearing. The same day, the tribunal issued a prehearing procedural order, ordering Dr. Poponin to produce to Virtual Pro all agreements with third parties having to do with the '177 patent and also with the subsequent unrelated inventions. The tribunal denied Dr. Poponin's application to submit a request for production of documents and to take Virtual Pro's deposition; and ordered the parties to exchange witness statements, witness lists, and exhibits. The tribunal set a date of September 20-22, and 25-26, 2006, for the final arbitration hearing.

On July 25, 2006, Dr. Poponin filed an application for a temporary restraining order in the present action. Following briefing by the parties and a hearing, the court denied the application in an order issued August 3, 2006.

Dr. Poponin now seeks a preliminary injunction, enjoining Virtual Pro from proceeding against him in the ICC arbitration. Virtual Pro seeks an order dismissing the complaint either for lack of subject matter jurisdiction or for failure to state a claim. In the alternative, Virtual Pro seeks an order staying this case pending the completion of the arbitration. Virtual Pro also seeks a protective order prohibiting Dr. Poponin from proceeding with discovery in this action while the arbitration is proceeding.

**DISCUSSION**

A.   Motion for Preliminary Injunction

    1.   Legal Standard

To prevail on a motion for preliminary injunction, plaintiff must show (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if

6

preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). See Rodde v. Bonta, 357 F.3d 988, 994 (9th Cir. 2004). Alternatively, injunctive relief can be granted if the plaintiff merely "demonstrate[s] . . . a combination of probable success on the merits and the possibility of irreparable injury." Id.

      2.      Plaintiff's Motion

Dr. Poponin argues that he is likely to succeed on the merits, asserting that it is the court, not the arbitrators that must decide the question of arbitrability; that the parties did not agree to arbitrate this dispute (based on lack of agreement in the Assignment); that the contract is procedurally unconscionable because his English skills are limited and he was at a disadvantage when presented with an agreement written in English, which he was pressured to sign by Vallila; and that the contract is substantively unconscionable and therefore unenforceable, because it seeks to "enslave" Dr. Poponin for life with regard to all contracts and inventions developed from the '177 patent, even if not directly related to the patented invention.

Dr. Poponin contends that absent injunctive relief, he will suffer irreparable harm, as he will be deprived of his right to trial by jury. He also asserts that his business will be damaged because the ICC tribunal has ordered him to turn over documents of a highly confidential nature to Virtual Pro. He claims that the information in those documents relates to his current business endeavors, which involve inventions that are not covered by the terms of the Agreement or the Assignment.[1] Dr. Poponin asserts that he should not be compelled to provide Vallila with information that Vallila can use to interfere with his (Dr. Poponin's) current business.

In a supplemental declaration, Dr. Poponin states that he was informed by one of his principal investors that the investor is withholding financing because of the pending

---

[1] In his declaration, Dr. Poponin describes his recent work as "research into the cost-effective, rapid, and individualized mapping of the human genome." He asserts that this research has nothing to do with the technology represented in the '177 patent.

7

arbitration, because the investor is concerned that Dr. Poponin will be compelled to disclose a confidential agreement that he has with "third parties" relating to the funding of his current research. Dr. Poponin contends that without the expected financing, his business will fold.

Dr. Poponin asserts that it is unlikely that he could recover damages from Virtual Pro, as Virtual Pro appears to be without domestic assets, and appears to be operated solely through the person of Martti Valilla in Paris.

Dr. Poponin also contends that he cannot fully present his case to the ICC tribunal, because his request to serve document requests on Virtual Pro was denied.

Finally, Dr. Poponin contends that the balance of hardships favors him, because the hardship of having to continue with the arbitration pending a final determination by this court as to the arbitrability question would be enormous.

In opposition, Virtual Pro makes four arguments. First, Virtual Pro asserts that this court has no subject matter jurisdiction to determine arbitrability, because the parties agreed that all disputes arising in connection with the Agreement would be decided in accordance with the ICC rules, which provide that arbitrability (or the "existence, validity or scope" of the agreement to arbitrate) is to be decided by the arbitrators.[2]

Second, Virtual Pro argues that if this court does decide to address the question of arbitrability, it should find that the dispute is arbitrable and deny the request for preliminary injunction. Virtual Pro contends that the Agreement and Assignment are separate documents and should be interpreted differently, and that the forum selection clause in the

---

[2] Rule 6(2) of the ICC Rules provides, in part,

If the Respondent does not file an answer, . . . or if any party raises one or more pleas concerning the existence, validity or scope of the arbitration agreement, the Court may decide, without prejudice to the admissibility or merits of the plea or pleas, that the arbitration shall proceed if it is prima facie satisfied that an arbitration agreement under the Rules may exist. In such a case, any decision as to the jurisdiction of the Arbitral Tribunal shall be taken by the Arbitral Tribunal itself. If the Court is not so satisfied, the parties shall be notified that the arbitration cannot proceed.

ICC Rule 6(2).

8

Assignment relates only to claims and legal actions relating to the Assignment itself. Virtual Pro asserts that the present dispute – whether either party has breached its obligations under the Agreement – is governed by the Agreement, not the Assignment.

Third, Virtual Pro contends that the arbitration provision is neither procedurally nor substantively unconscionable. Virtual Pro asserts that the Agreement does not bear any of the characteristics of an adhesive or unenforceable contract, and that Dr. Poponin had the draft Agreement in his possession for at least a day because he was encouraged by Vallila to take it home and think about it before he signed it. Virtual Pro also notes that it was Dr. Poponin who held the rights to the intellectual property, not Virtual Pro, and that Dr. Poponin cannot now argue that the parties' bargaining strength was unequal. Virtual Pro asserts that the arbitration provision is mutual, requiring each side to submit any disputes under the Agreement to the ICC.

Finally, Virtual Pro argues that Dr. Poponin has not met his burden of demonstrating a need for a preliminary injunction. Virtual Pro contends that Dr. Poponin cannot establish likelihood of success, because the court does not have jurisdiction over the claims alleged in the complaint. Virtual Pro also asserts that Dr. Poponin has not established a possibility of irreparable harm. Virtual Pro contends that the argument that the anonymous investors will withdraw their financial support if the case proceeds to arbitration could apply equally to the case if it proceeds to litigation. Similarly, if the case proceeds to litigation, Virtual Pro will request the same documents it has requested in the arbitration, so any temporary relief that Dr. Poponin receives from that obligation to produce documents will be short-lived.

With regard to the claim that Dr. Poponin will be irreparably harmed by the loss of his right to a jury trial, Virtual Pro argues that Dr. Poponin agreed to the jurisdiction of the ICC, rather than the courts, when he signed the Agreement with its broad arbitration provision, and confirmed that decision when he participated in the ICC arbitration, filed counterclaims, and affirmatively submitted the jurisdictional questions to the arbitrators.

In reply, Dr. Poponin argues that this court has exclusive jurisdiction to determine whether the dispute is arbitrable. Dr. Poponin contends that he has raised

serious questions of validity that require a judicial inquiry into the substance and circumstances of the Agreement, and whether there was any agreement to arbitrate whatsoever.

Dr. Poponin argues that Virtual Pro has failed to rebut his showing that the parties never clearly and unmistakably agreed to arbitrate this matter. He argues that because the Assignment states that any claims or legal actions relating to the Assignment "and the transactions to which it relates" shall be commenced in a state or federal court in the State of California, the arbitration provision in the Agreement is ineffective. He asserts that the disputes that are presently before the arbitrators are clearly claims relating to the Assignment "and the transactions to which it relates," because the Agreement was executed at the same time as the Assignment and is "defined in scope" by the Assignment.

He argues that under California Civil Code § 1642, the Agreement and the Assignment are legally part of the same contract because they relate to the same matters, were made between the same parties, and were made as substantially part of the same transaction. He also argues that the terms of one agreement are incorporated into another whenever the reference to the second agreement is clear and unequivocal, and that the words "incorporated by reference" are not necessary. He claims that the presence of two different dispute resolution provisions in this "unitary contract" creates an inherent conflict giving rise to an irreconcilable ambiguity as to whether the parties agreed to arbitrate. He contends that this ambiguity should be construed against Virtual Pro, the drafter of the contract documents, and that the court should find that the parties did not agree to arbitrate.

Second, Dr. Poponin asserts that his actions in connection with the arbitration do not constitute a waiver of his right to challenge the ICC's jurisdiction in this court. He contends that in addition to filing a motion to dismiss, he informed the tribunal shortly after he had been "forced" to act as his own counsel (January 30, 2006) that he did not accept the ICC's jurisdiction. He claims that he further expressed his unwillingness to be bound by arbitration by refusing to sign the Terms of Reference provided by the ICC tribunal  He

10

asserts that in the light of such clear statements and actions, he cannot be seen as having waived his right to object in this court to the tribunal's jurisdiction simply because he took the same action – moving to dismiss the arbitration for lack of jurisdiction – that the courts have held do not result in a waiver of the right to litigate.

He contends that the ICC tribunal's ruling should be discounted because the tribunal did not have the benefit of Dr. Poponin's current attorney's arguments in connection with these motions. At the time the issue of jurisdiction was presented to the tribunal, Dr. Poponin had dismissed his attorney because he could not afford to pay him, and he asserts that his brief filed with the tribunal did not mention the cases cited by his attorney in this motion; did not mention Civil Code § 1642 or the body of California case law relating to the reading together of related documents executed together; did not mention the California rule regarding the construing of ambiguities against the drafter; and did not mention any of the arguments relating to procedural or substantive unconscionability. He also asserts that it is clear from the brief he did file that he had little familiarity with English or with legal concepts or language.

Third, Dr. Poponin argues that the arbitration provision is both procedurally and substantively unconscionable. He claims that the circumstances under which the Agreement was executed caused it to be similar to a contract of adhesion, and demonstrate procedural unconscionability. He asserts that the "language imbalance" created a "differential in the parties' respective bargaining strength," because Dr. Poponin, with his limited English skills, was forced to rely on Vallila's description of the Agreement's terms. He also contends that the parties were unequal financially, because Dr. Poponin was on the verge of losing his patent rights for lack of funding, and Virtual Pro had the money he needed to save his application. He asserts in addition that, contrary to Virtual Pro's assertion, there was no period of negotiation. He claims that Vallila did not give him a day to review the agreement, but rather pressured him to sign it immediately – to "take it or leave it."

Dr. Poponin also argues that the arbitration provision is substantively

11

unconscionable, because there was "unfair surprise" inherent in Virtual Pro's assertion of an entitlement to all his subsequent work. He asserts that Virtual Pro's reading of the Agreement is also substantively unconscionable, as Virtual Pro is essentially asserting ownership of 50% of his labors indefinitely for a $4,000 patent prosecution payment (referring to the $4,000 that Virtual Pro allegedly paid the patent attorney to obtain the '177 patent on Dr. Poponin's invention).

Finally, Dr. Poponin asserts that he has satisfied the requirements for issuance of a preliminary injunction. He claims that continued, unwarranted participation in the arbitration is "per se irreparable harm." He also claims that he will suffer irreparable financial harm, as his reasearch, and the company he founded in anticipation of receiving funding, cannot continue if he is unable to meet his payroll obligations and pay the rent on the building housing his laboratories.

He disputes Virtual Pro's assertion that it does not matter whether the action proceeds in litigation in this court or in arbitration – insofar as the disclosure of documents in discovery is concerned – because, he argues, he can get a protective order in a court case that will protect his intellectual property in all circumstances, while the arbitrators have no jurisdiction to enforce a protective order on non-parties to this action. He also argues that this court is the only forum in which he can pursue his counterclaims, as the ICC tribunal dismissed the counterclaims after he failed to pay the required $106,000 advance in costs.

The court finds that the motion for a preliminary injunction must be DENIED. Dr. Poponin has not met his burden of showing either a likelihood of success or irreparable harm, or that the balance of hardships tips in his favor.

The threshold question is whether there is a valid agreement to arbitrate. Arbitration is fundamentally a creature of contract. United Steelworkers v. Warrior and Gulf Navigation Co., 363 U.S. 574, 582 (1960). "[A]rbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." AT&T Techs., Inc. v. Communication Workers, 475 U.S. 643, 648-49 (1986) (citation

omitted). The Federal Arbitration Act makes written agreements to arbitrate "valid, irrevocable, and enforceable" on the same terms as other contracts. 9 U.S.C. § 2.

Courts generally apply ordinary state-law principles governing contract formation in deciding whether an agreement to arbitrate exists. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Here, Dr. Poponin does not argue that there is no objective intent (expressed in the Agreement) that all disputes will be arbitrated. Rather, he argues that under California law the Agreement and the Assignment must be considered one contract, and that because there are two conflicting dispute resolution provisions in that "single contract," the agreement to arbitrate is not effective.

The court finds, however, that the two agreements are separate. Both parties signed the Agreement, which provides for arbitration of "all disputes arising in connection with the present Agreement." In addition, the Agreement states that it "constitutes the sum total of the [A]greement." Dr. Poponin's assignment of his rights in the invention was a separate contract, which was not signed by Virtual Pro, and which was not incorporated by reference into the Agreement. However, even if Dr. Poponin is correct that under California law, the Agreement and the Assignment must be considered together as one "unitary contract," that single contract clearly provides that any disputes relating to the Agreement are to be arbitrated, while any disputes relating to the actual Assignment itself are to be brought in a state or federal court in California.

While the Federal Arbitration Act contains a general presumption that arbitrability should be decided by the court, both state and federal cases hold that the issue may be referred to the arbitrator if there is clear and unmistakable evidence from the arbitration agreement that the parties intended that the question of arbitrability should be decided by the arbitrator. See Id. at 944-45; see also Contec Corp. v. Remote Solution Co., Ltd., 398 F.3d 205, 208 (2nd Cir. 2005); Dream Theater, Inc. v. Dream Theater, 124 Cal. App. 4th 547, 550-57 (2004)).

Moreover, the cases hold that where the parties' agreement to arbitrate includes an agreement to follow a particular set of arbitration rules – such as the ICC Rules – that

13

provide for the arbitrator to decide arbitrability, the presumption that courts decide arbitrability falls away, and the issue is decided by the arbitrator.  See The Shaw Group, Inc. v. Triplefine Int'l Corp. 322 F.3d 115, 121-22 (2nd Cir. 2003); Apollo Computer, Inc. v. Berg, 886 F.2d 469, 473 (1st Cir. 1989); The Daiei, Inc. v. United States Shoe Corp., 755 F.Supp. 299, 303 (D. Haw. 1991)); Dream Theater, 124 Cal. App. 4th at 557.

Because Dr. Poponin cannot show that there is no agreement to arbitrate, he cannot establish a likelihood of success on the merits.  In short, Dr. Poponin cannot prevail because this court has no subject matter jurisdiction to determine arbitrability.  By agreeing to arbitration under the ICC Rules, Dr. Poponin and Virtual Pro clearly and unmistakably agreed that questions of arbitrability would be submitted to arbitration.  Moreover, Dr. Poponin affirmatively submitted the issue of jurisdiction to the tribunal, by filing a request to dismiss the claims on January 20, 2006.  This confirmed his intent to arbitrate the question of arbitrability.  The fact that he stated in his reply brief that he did not accept the ICC's jurisdiction does not negate that fact that he submitted the question to the arbitral panel for decision.  Moreover, he was represented by counsel when he did so.

Dr. Poponin argues that under Kaplan, "merely arguing the arbitrability issue to an arbitrator does not indicate a clear willingness to arbitrate that issue, i.e., a willingness to be effectively bound by the arbitrator's decision on that point." Kaplan, 514 U.S. at 946.  While true, this proposition is irrelevant in the context of the present case.  In Kaplan, there was no clear and unmistakable evidence that the parties intended to submit the question of arbitrability to the arbitrators.  Dr. Poponin's attempt to apply the Kaplan result – the Kaplans did not clearly agree to submit question of arbitrability to arbitration, and thus question of arbitrability was subject to independent review by the courts – in the present case is therefore unavailing.

Dr. Poponin's argument that the Agreement is both procedurally and substantively unconscionable is also without merit.  Under California law, unconscionability has both a procedural and a substantive component.  The former focuses on "oppression" or "surprise" resulting from unequal bargaining power, while the latter focuses on " overly harsh" or

14

1  "one-sided" results. <u>Discover Bank v. Superior Court</u>, 36 Cal. 4th 148, 160 (2005).

2  Generally, a contract that is procedurally unconscionable is one that is a contract of
3  adhesion, which, imposed and drafted by the party of superior bargaining strength,
4  relegates to the subscribing party only the opportunity to accept the contract or reject it. <u>Id.</u>
5  Here, however, the parties were of equal bargaining strength. Dr. Poponin's limited facility
6  with English did not make him a "weaker party" for purposes of this analysis. He could
7  have asked a third party to assist him with his English. Moreover, while Virtual Pro had
8  access to potential funding sources, Dr. Poponin was the owner of the invention. Thus,
9  each side had something the other side wanted.

10  Dr. Poponin characterizes the Agreement as having been presented to him on a
11  "take-it-or-leave-it-basis," but this is not entirely accurate. Even if Dr. Poponin's version of
12  events is true, and Vallila urged him to sign the contracts immediately, the complaint
13  reflects that Vallila presented the contracts to him following some period of negotiation and
14  discussion. If Dr. Poponin was uncomfortable about signing the Agreement, he could have
15  asked for more time to review it. There is no evidence that the arbitration provision was
16  included in the Agreement on a true "take-it-or-leave-it" basis (as in bank account or credit
17  card agreements, or cellular phone service contracts).

18  Substantive unconscionability takes many forms, but may generally be described as
19  "unfairly one-sided." <u>Id.</u> One such form is an arbitration agreement's lack of a "modicum of
20  bilaterality" wherein the employee's claims against the employer, but not the employer's
21  claims against the employee, are subject to arbitration. <u>Little v. Auto Stiegler, Inc.</u>, 29 Cal.
22  4th 1064, 1071-72 (2003). The paramount consideration in assessing substantive
23  unconscionability is mutuality. <u>Abramson v. Jupiter Networks</u>, Inc., 115 Cal. App. 4th 638,
24  664 (2004); <u>see also</u> <u>Armendariz v. Foundation Health Psychcare Servs., Inc.</u>, 24 Cal. 4th
25  83, 120 (2000) (arbitration agreement imposed in adhesive context lacks basic fairness and
26  mutuality if it requires one contracting party, but not the other, to arbitrate all claims arising
27  out of the same transaction or occurrence or series of transactions or occurrences).

28  Here, the arbitration provision governs "[a]ll disputes arising in connection with" the

15

Agreement. It does not distinguish among types of claims, or suggest that claims likely to be brought by one party in connection with the Agreement will be arbitrated, while claims likely to be brought by the other will not. Because of the nature of the Assignment, it is likely that only Virtual Pro would potentially have been situated to bring a claim under the Assignment – e.g., to compel Dr. Poponin to execute the necessary documents to effectuate the assignment. Nevertheless, the fact that the Assignment provides that "any claims or legal actions relating to" the Assignment will be brought in a state or federal court in California does not create a lack of mutuality in the arbitration provision found in the Agreement, because the arbitration provision applies to the entire Agreement (though not to the Assignment, which, in any event, was a fait accompli well before the '177 patent issued). There is no suggestion in the Agreement that only one party will be compelled to arbitrate.

Dr. Poponin's claim that Virtual Pro's alleged interpretation of the Agreement is unconscionable because Virtual Pro is asserting ownership of 50% of Dr. Poponin's intellectual property is without merit. The scope of the Agreement is what is to be decided by the arbitrators. The fact that Virtual Pro is arguing for a particular interpretation of the Agreement does not make the agreement unconscionable.

Nor has Dr. Poponin established that he will be irreparably harmed if the injunction does not issue. He argues, essentially, that his business will fail if he is compelled to proceed with arbitration, but not if he can proceed with litigation in the court. However, the opinions of his investors with regard to the relative merits of a court action as opposed to arbitration are irrelevant. In addition, he will have to cooperate with discovery in any court action, and the parties will be bound by protective orders whether they proceed in arbitration or a court action.

His claims that he will be harmed because he will be denied the opportunity to argue his counterclaims and because he was not permitted to take discovery are without merit. He was not precluded from filing counterclaims in the arbitration. Rather, his counterclaims were dismissed by the arbitrators because he failed to pay the required costs. Similarly, he

1 was not prevented from taking discovery, but simply chose not to before the deadline had
2 expired.  These are not valid grounds for enjoining Virtual Pro from proceeding with the
3 arbitration.

B. Motion to Dismiss

    1. Legal Standard

Federal courts are courts of limited jurisdiction, and can adjudicate only those cases which the Constitution and Congress authorize them to adjudicate -- those involving diversity of citizenship or a federal question, or those to which the United States is a party. See Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994).  Federal courts are presumptively without jurisdiction over civil actions, and the burden of establishing that a cause lies within this limited jurisdiction rests upon the party asserting jurisdiction. Id.

Subject matter jurisdiction cannot be waived, and the court is under a continuing duty to dismiss an action whenever it appears that the court lacks jurisdiction. Billingsly v. C.I.R., 868 F.2d 1081, 1085 (9th Cir. 1989). The plaintiff bears the burden of demonstrating that subject matter jurisdiction exists over this complaint when challenged under Fed. R. Civ. P. 12(b)(1). See, e.g., Tosco Corp. v. Communities for a Better Env't, 236 F.3d 495, 499 (9th Cir. 2001).

    2. Defendant's Motion to Dismiss

For the reasons stated in its opposition to the motion for preliminary injunction, Virtual Pro argues that the court should dismiss this action for lack of subject matter jurisdiction.  In the event that the court determines that some claims are not arbitrable, Virtual Pro seeks an order staying the action pending the completion of the arbitration.

Dr. Poponin opposes the motion, making the same arguments as in his motion for preliminary injunction.

The court finds that the motion must be GRANTED.  The court has no jurisdiction to decide the question of arbitrability, because the parties agreed to arbitrate any disputes arising under the Agreement pursuant to the ICC Rules of Arbitration, which provide that

arbitrability is for the arbitrators to decide. The ICC tribunal having determined that it has jurisdiction to decide all disputes arising from the Agreement, the claims asserted by Dr. Poponin herein are subject to arbitration.

C.  Defendant's Motion for Protective Order

Virtual Pro seeks a protective order precluding plaintiff from conducting discovery in this action while the arbitration is on-going. This motion is DENIED, as moot.

## CONCLUSION

In accordance with the foregoing, plaintiff's motion for a preliminary injunction is DENIED, and defendant's motion to dismiss is GRANTED.

**IT IS SO ORDERED.**

Dated: September 20, 2006

_____
PHYLLIS J. HAMILTON
United States District Judge